## STATE *vs.* PEDRO JESWELL.

### PROVIDENCE—MAY 28, 1900.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

(1)    *Criminal Law.    Dying Declarations.*

In a prosecution for murder the coroner testified that he saw the deceased after he was wounded, and took his ante-mortem statement. The statement was produced and offered in evidence. It was as follows: "I, A. B., being in the fear and expectation of death, do make the following statement as my dying declaration," etc. To this declaration defendant objected, because there was no evidence that deceased believed himself in a dying condition at the time :—

*Held*, that, independently of Gen. Laws R. I. cap. 287, § 15, the statement contained *prima facie* all the requisites of a dying declaration.

While it would have been better procedure to have required the magistrate to testify to the condition of the deceased and the conversation relative to the statement and his condition, yet, owing to the positive statements contained in the declaration and the fact that the defendant had opportunity to cross-examine the magistrate, the absence of these preliminary inquiries cannot be considered to have prejudiced the defendant.

INDICTMENT for murder.   The facts are sufficiently stated in the opinion.   Heard on petition of defendant for a new trial, and new trial denied.

(1)   TILLINGHAST, J.   The defendant, who, on the 10th day of January, 1899, was convicted of the crime of murder, now petitions for a new trial on the grounds that the verdict was against the evidence and that the justice presiding at the trial erred in permitting the State to offer in evidence a paper purporting to be the dying declaration of George G. F. Collins, the person whom the defendant is charged with having murdered.

We will first consider the question raised regarding the admissibility of the paper referred to.   Harmon S. Babcock was called as a witness by the State and testified that he was a coroner in East Providence, and that he saw the deceased after he was wounded, and took his ante-mortem statement. This statement was thereupon produced by the witness, and, after being read by the justice presiding, was allowed to be offered in evidence against the defendant's objection.   The paper was as follows :

"I, George G. F. Collins, of Seekonk, Mass., being in the fear and expectation of death, do make the following statement as my dying declaration.   I was hurt in Rumford, R. I., on Newman avenue, at about half-past 12 A. M. on October 2d, 1898.   I got into an argument with another party on the car, electric car ; he got off at one end and I got off at the other ; he came around and stabbed me.   I could not state what the weapon was.   I had not struck him or done anything of the kind.   I don't know his name.   He had a soft black hat on, and he had a brownish suit with a short coat. He was a man about my height, 5 ft. 11 in. ; a man of fair, fresh, lightish complexion ; he had black eyes, I think.   I should say he was either French or Italian.   He came up in front of me when he stabbed me.   He got on the car again, I think, after he had stabbed me.   Quite a number of Rumford people on the car, Victor Carlson, Alfred Johnson, Samuel

Lindruth. (Signed) George G. F. Collins, his mark. Sub-
scribed and sworn to this 3rd day of October, A. D. 1898,
Rhode Island Hospital, city and county of Providence. Be-
fore me, Harmon S. Babcock, Notary Public."

Defendant's counsel took the point that the paper was not
admissible because there was no evidence to show that Collins
believed himself to be beyond the hope of recovery and in a
dying condition at the time, and they therefore insisted and
now insist that the ruling was erroneous.

Gen. Laws R. I. cap. 287, § 15, provides that "Whenever
the coroner has notice that there is in his town any person who
has been injured by the criminal act, omission, or careless-
ness of another, and that said person believes that his death is
impending from such injury, said coroner may take the state-
ment of such person concerning the manner in which and the
person by whom such injury was inflicted; and the statement
so taken shall be reduced to writing, and, if practicable, in
the presence of the injured person."

It is clear that the principal object of this statute is to
obtain and preserve the dying statement of a person whose
injuries have been caused by the criminal act of another, to
be used as evidence in the prosecution of the person accused
of the crime. But, independently of the statute, a dying
declaration in which the circumstances of the injury received
are the subject thereof, taken by a magistrate, is always
admissible in evidence against the accused if it is clearly
made to appear that the declarant fully believed that his
death was imminent at the time of making the declaration.
Oral and unsworn declarations of the injured person are also
admissible in evidence, if it appears that they were made in
view of impending death, on the ground that when one is in
the "expectation of immediate death, all temptation to false-
hood, either from interest, hope, or fear, will be removed,
and the awful nature of his situation will be presumed to im-
press him as strongly with the necessity of a strict adherence
to truth as the most solemn obligation in a court of justice."
Wharton's Crim. Ev. 8 ed. § 276; 1 Greenleaf Ev. 13 ed. §§

156–7, and cases in note; *State* v. *Dickinson*, 41 Wis. 306. See also *Maine* v. *The People*, 9 Hun. 113 ; *Slarkey* v. *People*, 17 Ill. 17; *Kilpatrick* v. *Com.*, 31 Pa. St. 198; *State* v. *Swift*, 57 Conn. 496 ; *Com.* v. *Cooper*, 5 Allen, 495 ; *Com.* v. *Casey*, 11 Cush. 421.

Such declarations are admissible as evidence against the accused not because they constitute an exception to the constitutional right of the defendant to be confronted with the witnesses against him, but because they were admissible at common law ; "and there is nothing in the constitutional declaration to shut them out." *State* v. *Waldron*, 16 R. I. p. 194, and cases cited; *State* v. *Dickinson*, 41 Wis. p. 308. As the test of the admissibility of such evidence was quite fully considered by us in the recent case of *State* v. *Sullivan and Dalton*, 20 R. I. 114, there is no occasion for further discussion upon this point.

We come therefore to the point which is made by defendant that there was no evidence to show that the deceased believed himself to be beyond the hope of recovery when he made the declaration. We think it is clear that the statement itself contains sufficient evidence to this effect. It starts out with the assertion that "I, George G. F. Collins, of Seekonk, Mass., being in the fear and expectation of death, do make the following statement *as my dying declaration.*" This is certainly clear and explicit, and seems to contain all of the requisites of such a dying declaration as the law makes evidence in cases of felonious homicide. It is a component part of the entire statement, and, nothing appearing to contradict it, is entitled to as much credence as any other part thereof. It shows *prima facie*, at any rate, that the deceased was *in extremis* when he made it, and that he fully appreciated his condition. And while we should have been better satisfied if the trial court had required the coroner to testify as to the condition of the deceased, how he appeared, what he said, and what was said to him by the coroner regarding the statement and regarding his condition, and also as to whether the statement was read to the deceased before sign-

ing it, yet we cannot say as matter of law that the declaration was not admissible without these preliminaries, nor do we see that the defendant could have been prejudiced by omitting them, in view of the positive and unequivocal statements contained therein. It is pertinent to remark in this connection, however, that owing to the necessary infirmities of dying declarations, and particularly to the fact that they are made in the absence of the accused, and hence without any opportunity to cross-examine or contradict the makers thereof, the law does not look with favor thereon and they should be received with great caution, and every reasonable opportunity should be given the defendant to ascertain the facts connected with the transaction. 3 Rice on Ev., § 336 ; *Mattox* v. *United States*, 146 U. S. 151 ; *People* v. *Hodgdon*, 55 Cal. 72. As the defendant in the case at bar had full opportunity, so far as appears, to cross-examine the coroner as to the condition and belief of the deceased in the premises, in addition to what was contained in the paper, but did not do so, it is fair to infer that he did not anticipate that anything more favorable to his defence than was contained in the paper itself would be obtained thereby. That evidence relating to the condition and state of mind of the deceased could have been offered by the defendant subsequently to the admission of the paper referred to is shown by the authorities, *State* v. *Swift*, 57 Conn. 496 ; *Kelly* v. *United States*, 27 Fed. Rep. 616 ; the order in which evidence is introduced being largely in the discretion of the trial court. *Town of Hopkinton* v. *Waite*, 6 R. I. 374.

The other ground upon which a new trial is based, namely, that the verdict is against the evidence, cannot prevail. It appears that the defendant and Collins had an altercation while riding on the street car just previous to the tragedy, and that there was some talk of a fight. But this trouble had apparently subsided before they left the car. It further appears, or, rather, there is evidence from which the jury might have found, that after the deceased got off the car the defendant ran after him and stabbed him. In any event

there is evidence from which the jury might have found that even if the deceased invited the defendant to get off the car and fight him, of which there is some evidence, the use by the defendant of a deadly weapon during the fight, the deceased being unarmed, was sufficient evidence of malice to constitute the crime of murder. The testimony of the defendant that he voluntarily left the car after the deceased and those who were with him had alighted, because he was afraid that if he remained in the car they would shoot him, is wholly unreasonable. And the undisputed fact that he got off the car before reaching the point where he had intended to alight, leaving a bundle with one of his companions in the car with a request to carry it home for him, strongly indicates that he intended to have a fight with the deceased.

Further discussion of the testimony, which is quite voluminous, would serve no useful purpose. We have carefully examined it, together with the charge of the court, which was certainly as favorable to the defendant as he could reasonably have asked, and, on the whole, we do not feel warranted in disturbing the verdict.

Petition denied, and case remitted for sentence.

*Willard B. Tanner, Attorney-General*, for the State.
*Augustus S. Miller and H. C. Curtis*, for defendant.