### STATE

v.

### Stephen PAILIN.

### No. 89-335-C.A.

Supreme Court of Rhode Island.

July 2, 1990.

James E. O'Neil, Atty. Gen., John J. Hogan, Sp. Asst. Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Barbara Hurst, Asst. Public Defender, for defendant.

## OPINION

KELLEHER, Justice.

In 1986 Stephen Pailin (Pailin) was indicted on a charge that he had murdered Sim Strong (Strong). After a lengthy trial, a Superior Court jury returned a verdict of guilty to the charge of second-degree murder. Pailin's motion for a new trial was denied. Subsequently the trial justice imposed a forty-year sentence, with fifteen of those years suspended. Pailin was to be placed on probation for a period of fifteen years, which was to begin upon his release from prison.

Strong was stabbed while he was outside the Washington Tap on Potters Avenue sometime around midnight on June 7, 1986. Strong died about two weeks later. The relevant facts giving rise to the murder indictment are as follows.

At various times during the evening of June 7, 1986, several employees of the Washington Tap, a bar located in South Providence, observed Strong and Pailin at the bar. The bar's bouncers recognized Pailin because they knew him as a former employee of the bar.

One of the bouncers testified that he saw Pailin and Strong in the bar's premises and heard them arguing and calling each other "punk." He also testified that the two men shoved each other and that at one point Strong poked an umbrella in Pailin's direction. The shoving match resumed, but ultimately Pailin and Strong left the bar.

One of the bar's customers, who had left the bar to savor a "shot" from a pint of rum he had left in his car, observed Strong and another man arguing and pushing each other. This witness subsequently identified the other man as Pailin. He also observed Pailin as he struck Strong in the head and stomach and then ran away.

A witness who had responded to Strong's call for help found him bleeding. One of the bouncers came out of the bar and saw Strong leaning against the building "with his stomach hanging out." The other bouncer saw Pailin standing about five to ten feet away from Strong. According to this witness, Pailin was holding in his hand a shiny, sharp object, eight to ten inches in length. The bouncers then carried Strong to a car and placed him in the front seat. They then proceeded, posthaste, to St. Joseph Hospital. Strong died of cardiac arrest on June 23, 1986. The medical examiner conducted an autopsy and found Strong's abdominal wound, which was approximately eleven inches long, to be consistent with a stabbing.

The defendant is before us on appeal in which his appellate counsel challenges three evidentiary rulings made by the trial justice.

The first claim of alleged error relates to a Superior Court justice's determination that Strong's comments to the bouncers constituted a dying declaration that conformed to the dictates of Rule 804(b)(2) of the Rhode Island Rules of Evidence.

Prior to trial, defendant moved to preclude the prosecution's use of these statements made by Strong. At a pretrial hearing, the trial justice listened to testimony from the club's bouncers concerning Strong's utterances as they transported Strong to St. Joseph Hospital. One of the bouncers testified that he heard Strong declare, "I'm dying. I'm dying. Steve stabbed me. Why did Steve stab me? Where's Regina? It's all her fault. * * * Where's the bitch?"[1] The other bouncer testified that he heard Strong say repeatedly, "He stabbed me. I'm going to die. My guts are hanging out."

Pailin's counsel now claims that the trial justice erred in admitting Strong's comments into evidence because they were based on "conjecture and opinion" rather than on "observable fact."

Prior to the adoption of the Rhode Island Rules of Evidence in 1987, there were four conditions that had to be satisfied before a dying declaration could be admitted into evidence: (1) the declarant was aware of

---

1. Regina worked at the Washington Tap as a barmaid. She was an acquaintance of both Pailin and Strong. She had known Pailin for a period of three years, and she had known Strong for a shorter period.

impending death, (2) death ensued, (3) the declaration was offered against the individual alleged to have killed the declarant, and (4) the statement related to the circumstances of a homicide. *State v. Gazerro,* 420 A.2d 816, 819 n.2 (R.I.1980). The adoption of the Rules of Evidence has changed Rhode Island law as it relates to dying declarations so that their use is no longer limited to criminal cases and the declarant's death does not have to occur. *See* Advisory Committee's Note to R.I. R. Evid. 804(b)(2).

Pailin contends that those portions of Strong's statement referring to Regina should not have been admitted into evidence as a dying declaration because they do not concern "the cause or circumstances" of what Strong believed to be his impending death. However, Pailin at no time challenged the trial justice's ruling that (1) Strong believed his death was imminent, (2) Strong's belief was supported by his physical condition, and (3) Strong's statements were made at a time when he specifically stated, "I'm dying. * * * I'm going to die." Pailin's sole complaint is directed at the content of the dying declarations that were admitted against him.

The requirement that a dying declaration must relate to the cause or circumstances of the declarant's perceived impending death is one of long standing in Rhode Island law. *State v. Jeswell,* 22 R.I. 136, 138, 46 A. 405, 406 (1900). However, it appears that at no time has this court ever excluded such a declaration, or any portion thereof, because the decedent's statement was framed as a conclusion or as an opinion.

In addressing Pailin's argument that Strong's dying declaration was based on "conjecture and opinion," we are mindful that there is a difference of opinion regarding whether a dying declaration should be rejected as evidence because the deceased has expressed an opinion rather than a fact.

Wigmore takes the position that the prohibition against opinion evidence has no application when the admissibility of a dying declaration is in issue. 5 Wigmore, *Evidence* § 1447 (Chadbourn rev. ed.1974). In expressing this view, Wigmore receives support from Justice Cardozo when in *Shepard v. United States,* 290 U.S. 96, 101, 54 S.Ct. 22, 24–25, 78 L.Ed. 196, 200 (1933), Cardozo observed:

> "The form [of the dying declaration] is not decisive, though it be that of a conclusion, a statement of the result with the antecedent steps omitted. * * * 'He murdered me,' does not cease to be competent as a dying declaration because in the statement of the act there is also an appraisal of the crime. * * * One does not hold the dying to the observance of all the niceties of speech to which conformity is expected from a witness on the stand. What is decisive is something deeper and more fundamental than any difference of form. The declaration is kept out if the setting of the occasion satisfies the judge, or in reason ought to satisfy him, that the speaker is giving expression to suspicion or conjecture, and not to known facts."

However, the majority of jurisdictions subscribe to the belief that since a dying declaration is a substitute for sworn testimony, it must appear that the declaration would have been admissible had the declarant been testifying as a witness. Accordingly, the declarant's expression of an opinion or a conclusion is not admissible in evidence as a dying declaration. 2 *Wharton's Criminal Evidence,* § 313 (Turcia 14th ed.1986).

■ Having set forth the differing views regarding admissibility of a dying declaration, we should point out that a close examination of Strong's hospital-bound identification of his assailant reveals that at no time did he speak in terms of conjecture or opinion. The record is clear that Strong was very factual when the bouncers transported him to a nearby hospital. They heard Strong say, "I'm dying. I'm dying. Steve stabbed me. Why did Steve stab me? Where's Regina? It's all her fault. * * * I'm going to die. My guts are hanging out." In blaming Regina for the situation in which he found himself, Strong was, in the words of Cardozo, not indulging in "all the niceties of speech to which con-

formity is expected from a witness on the stand." However, it is obvious that Strong, when identifying his assailant, was right on target. Consequently we reject Pailin's challenge to the trial justice's admission of Strong's comments.

The second evidentiary ruling challenged involves the trial justice's refusal to preclude the prosecutor's impeachment of Pailin with a misdemeanor conviction. Pailin contends that the trial justice abused his discretion by allowing impeachment of Pailin with a misdemeanor conviction that did not involve dishonesty or false statement. Pailin argues that he was particularly prejudiced by this ruling because the misdemeanor conviction admitted into evidence involved the illegal possession of a knife.

The trial justice based his ruling on an analysis of G.L.1956 (1985 Reenactment) § 9–17–15 and R.I. R. Evid. 609. Section 9–17–15 provides, "No person shall be deemed an incompetent witness because of his conviction of any crime, or sentence to imprisonment therefor; but shall be admitted to testify like any other witness, except that conviction or sentence for any crime or misdemeanor may be shown to affect his credibility." This court has interpreted § 9–17–15 to mean that "a witness may be impeached by evidence of a prior conviction, regardless of the possible prejudice or of whether the conviction was for a crime involving dishonesty or false statement." *State v. Moretti,* 521 A.2d 1003, 1011 (R.I. 1987).

Rule 609 concerns the impeachment of witnesses through the use of prior convictions and provides in pertinent part:

"(a) *General Rule.* For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record. 'Convicted of a crime' includes (1) pleas of guilty, (2) pleas of nolo contendere followed by a sentence (i.e. fine or imprisonment, whether or not suspended) and (3) adjudications of guilt.

"(b) *Discretion.* Evidence of a conviction under this rule is not admissible if the court determines that its prejudicial effect substantially outweighs the probative value of the conviction. If more than ten years has elapsed since the date of the conviction * * * or if the conviction is for a misdemeanor not involving dishonesty or false statement, the proponent of such evidence shall make an offer of proof out of the hearing of the jury so that the adverse party shall have a fair opportunity to contest the use of such evidence."

This court recently observed: "Whereas it can certainly be said that the rule [R.I. R. Evid. 609] was not intended to replace § 9–17–15, there can be no question that it places the statute in a new light. Now a trial justice is required to determine whether the prejudicial effect of evidence outweighs its probative value. If the prejudicial effect of the conviction substantially outweighs its probative value, it is inadmissible." *State v. Maxie,* 554 A.2d 1028, 1031–32 (R.I.1989).

In rendering his ruling, the trial justice stated:

"The Rule 609 now in effect in Rhode Island, I think the framers generally intended to incorporate Rhode Island practice as it had been in the past, premised on Section 9–17–15, which allowed impeachment for any crime whether felony or misdemeanor. It does not necessarily distinguish between truth and veracity as does the Federal Rule * * * I think that where credibility is a significant issue * * * evidence of prior crimes ought to be admitted, even though they don't bear precisely on truth and veracity."

Rhode Island Rule of Evidence 609 differs from the Federal rule in several significant respects. Rule 609(a) of the Federal Rules of Evidence establishes the general rule that evidence of a criminal conviction is admissible only if the evidence relates to (1) a crime punishable by death or imprisonment in excess of one year and the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the defendant or (2) a crime involving dishonesty or false statement regardless of the punishment. In contrast, Rhode Island Rule 609(b) does not explicit-

ly set forth criteria for the admissibility of prior convictions for impeachment but only requires that the proponent of such evidence make an offer of proof out of the hearing of the jury "so that the adverse party shall have a fair opportunity to contest the use of such evidence."

Pailin requests this court to construe the language of Rule 609(b) to establish a rebuttable presumption that the use of misdemeanors that do not involve dishonesty or false statements is inappropriate for impeachment purposes. In support of his position Pailin presents a survey of the approaches taken by other jurisdictions with regard to impeachment by prior conviction. Although this discussion is instructive, this court is constrained to analyze this evidentiary issue pursuant to Rhode Island law.

■ It is our opinion that Rule 609 broadens the scope of this State's established rule, set forth in § 9–17–15, only to a limited extent. Rule 609(b) requires a trial justice to determine whether the prejudicial effect of admission into evidence of a prior conviction outweighs its probative value. As noted earlier, the Rhode Island rule also imposes certain procedural requirements if more than ten years have elapsed since the date of the conviction or if the conviction is for a misdemeanor not involving dishonesty or false statement. We do not believe, however, that Rule 609(b) establishes a rebuttable presumption that would preclude the use of misdemeanors that do not involve dishonesty or false statements for impeachment.

In making his ruling, the trial justice relied, in part, on the decisions of the First Circuit Court of Appeals in *United States v. Oakes*, 565 F.2d 170 (1st Cir.1977), and *United States v. Russo*, 540 F.2d 1152 (1st Cir.), *cert. denied*, 429 U.S. 1000, 97 S.Ct. 529, 50 L.Ed.2d 611 (1976). In both cases the court determined that the probative value of a previous felony conviction outweighed its prejudicial effect when credibility was a significant issue in the trial. Although these cases involve prior felony convictions, they are relevant because Rule 609 does not distinguish between felony convictions and misdemeanor convictions for purposes of admissibility for impeachment.

■ Here the trial justice found that credibility was a significant issue and that the probative value of Pailin's prior misdemeanor conviction outweighed the prejudice to him. He heard the state's motion to introduce this evidence in limine and therefore satisfied the procedural requirements of Rule 609(b). Accordingly it is our opinion that the trial justice did not abuse his discretion when he permitted the introduction of evidence of Pailin's prior misdemeanor conviction.

Another alleged abuse of discretion occurred when the trial justice refused to suppress a witness's in-court identification of Pailin as the man who was engaged in a physical confrontation with Strong outside the Washington Tap. The defense contends that this in-court identification should have been suppressed because circumstances surrounding the identification made it unreliable and likely to have been mistaken.

This witness was apparently the only eyewitness to the entire altercation between Strong and Pailin. He was the individual we referred to earlier who had left the bar to enjoy a bit of rum from a bottle in his car. He was briefly questioned by the police at the scene, but he was never asked to go to the police station to give a statement. In July 1987 he was shown an array of photographs; however, at that time he did not identify Pailin. The witness testified that he had seen Pailin before the stabbing but that he did not know him by name. He also testified that he had seen Pailin twice in a nearby bar on two occasions subsequent to June 1986.

The defense moved to suppress any in-court identification by this witness because his only identification prior to trial occurred as a result of a courthouse confrontation. The encounter occurred in March 1988 when the witness reported to the Frank Licht Judicial Complex pursuant to a subpoena from the Office of the Attorney General. He reported to the Attorney General's office on the second floor of the Licht Complex and then went for a walk upstairs

to the third floor. Pailin testified that he was waiting outside courtroom 12M on the third floor when the witness approached him and said, "How you doing, Stephen." Pailin did not respond because his attorney had instructed him not to speak to anyone. A few minutes later the prosecutor arrived on the scene and conversed with the witness, and they both returned to the Attorney General's office.

The trial justice denied Pailin's motion to suppress, ruling that the witness's identification of Pailin as a result of the chance encounter in the courthouse did not taint the identification. The trial justice expressed the belief that the subsequent meeting between the prosecutor and the witness did not in itself suggest an orchestration of the initial encounter. The trial justice stated, "I find then that the witness's identification of the defendant here in court is a product of his own observations, his having known the defendant before, having seen the defendant since, and consequently the motion to suppress the in-court identification of this witness during the course of the trial is denied."

 "In passing on a decision of a trial justice on a motion to suppress, the duty of the reviewing court is to view the evidence in the light most favorable to the government and apply the 'clearly erroneous' rule." *State v. Manocchio*, 497 A.2d 1, 10 (R.I.1985); *State v. Beaumier*, 480 A.2d 1367, 1375 (R.I.1984). This court has discussed a courthouse confrontation similar to the one at issue in the present litigation in *Manocchio*.

In *Manocchio* the state's primary witness was escorted to a courtroom by a prosecutor and a police officer approximately six months prior to the start of the actual trial, when the parties apparently thought the trial was to begin. After the case was called and the attorneys went into the judge's chambers, the witness went out into the hallway to have a cigarette. While she was in the hallway, she observed the defendants. 497 A.2d at 11. Defense counsel contended that this encounter constituted such a suggestive circumstance that the witness's subsequent incourt identifications were rendered inevitably erroneous by the incident. The court rejected this assertion, finding "that nothing more occurred than an 'accidental encounter,' not a one-on-one confrontation." *Id.*

The trial justice's finding that the encounter that occurred in the courthouse between the witness and Pailin was not orchestrated is well supported in the record. The record indicates that no one instructed the witness to go to the third floor to observe Pailin and that the witness's meeting with Pailin was merely an "accidental encounter." We reject Pailin's argument that the trial justice was unduly influenced by the nonorchestrated nature of the confrontation. Accordingly, it is our opinion that the trial justice did not err in denying Pailin's motion to suppress the in-court identification.

For the reasons stated, the defendant's appeal is denied and dismissed and the judgment of conviction is affirmed.