**Robert O. GONDER**

v.

**STATE of Rhode Island.**

No. 2005–190–MP.

Supreme Court of Rhode Island.

Nov. 16, 2007.

∞→356

Leo Manfred, Esq., Westerly, for Plaintiff.

Aaron Weisman, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

The applicant, Robert O. Gonder, seeks review from this Court of the denial of his application for postconviction relief. This case came before the Court for oral argument on October 1, 2007, pursuant to an order directing the parties to appear and show cause why the issues raised in this case should not be summarily decided. After considering the record, the briefs submitted by the parties, and the oral arguments of counsel, we are of the opinion that cause has not been shown and that the case should be decided at this time. For the reasons set forth below, we affirm the ruling of the Superior Court.

### Facts and Travel

On April 15, 1994, Mr. Gonder was charged by indictment with the first-degree murder of his wife, Marie Gonder. A jury trial commenced on February 7, 1995. On February 13, however, in exchange for the state's agreement to withdraw its request that he be sentenced to life imprisonment without the possibility of parole,

Mr. Gonder pled guilty to the first-degree murder of his wife, and he was sentenced to life imprisonment.

On January 24, 1996, Mr. Gonder filed an application for postconviction relief pursuant to G.L.1956 § 10–9.1–1, alleging ineffective assistance of counsel by his trial attorney. Counsel was appointed by the Superior Court to represent Mr. Gonder and to investigate the merits of his claims. The appointed attorney reviewed the record and, on May 3, 2001, filed with the court a memorandum, wherein he concluded that Mr. Gonder's application for postconviction relief lacked merit. Together with that memorandum, the same attorney filed a motion to withdraw from further representation of Mr. Gonder, and in the text of said motion the attorney requested that Mr. Gonder be informed that he could proceed *pro se.*

On May 21, 2001, without holding a hearing, the justice of the Superior Court to whom the case was assigned issued an order denying Mr. Gonder's application for postconviction relief and granting counsel's motion to withdraw. Mr. Gonder then filed a notice of appeal with this Court with respect to that order. At that point, the state conceded that there was error in the court's failure to have held a hearing, as required by chapter 9.1 of title 10 and this Court's opinion in *Shatney v. State,* 755 A.2d 130 (R.I.2000). Consequently, on December 4, 2002, this Court vacated the order denying Mr. Gonder's application for postconviction relief and remanded the case for a hearing.

On remand, Mr. Gonder filed, *pro se,* an amended application for postconviction relief. In his amended application, in addition to claiming ineffective assistance of counsel, Mr. Gonder alleged: (1) that he was under the influence of drugs and alcohol both at the time of the murder and at the time that he reported the shooting of his wife to the police; (2) that, while he was being interrogated, the police denied him access to his attorney and coerced him into making a confession by manipulating his altered state of mind; and (3) that, after he was arrested, the victim's family seized his material assets, thus preventing him from retaining the counsel of his choice and requiring him to be represented by a public defender.

A hearing on the amended application for postconviction relief was held on December 16, 2004. After indicating that the ultimate issue to be decided was whether or not Mr. Gonder's guilty plea was voluntary, knowing, and intelligent, the hearing justice concluded that Mr. Gonder's allegation of ineffective assistance of counsel lacked merit; accordingly, he denied the application for postconviction relief. It is from that denial that Mr. Gonder now seeks review by this Court.

**Standard of Review**

■ Section 10–9.1–1 provides that postconviction relief is a remedy available to any person who has been convicted of a crime and who thereafter alleges either that the conviction violated the applicant's constitutional rights or that the existence of newly discovered material facts requires vacation of the conviction in the interest of justice.[1] *Larngar v. Wall,* 918 A.2d 850, 855 (R.I.2007). In our decision in the case of *State v. Thomas,* 794 A.2d 990 (R.I. 2002), we set forth the following criteria with respect to this Court's review of a hearing justice's decision concerning an application for postconviction relief:

1. An applicant for postconviction relief bears the burden of proving, by a preponderance of the evidence, that postconviction relief is warranted. *See, e.g., Larngar v. Wall,* 918 A.2d 850, 855 (R.I.2007).

"We will not disturb a trial justice's findings on an application for postconviction relief absent clear error or a showing that the trial justice overlooked or misconceived material evidence. * * * However, questions of fact concerning whether a defendant's constitutional rights have been infringed, and mixed questions of law and fact with constitutional implications, are reviewed *de novo*. * * * Finally, findings of historical fact, and inferences drawn from those facts, will still be accorded great deference by this Court, even when a *de novo* standard is applied to the issues of constitutional dimension." *Id.* at 993 (citations and internal quotation marks omitted).[2]

## Analysis

## I

## Ineffective Assistance of Counsel

### A

### The Strickland Test

Mr. Gonder asserts that his application for postconviction relief should have been granted because he was allegedly deprived of his right to the effective assistance of counsel. In his application, Mr. Gonder alleges a number of deficiencies with regard to his trial attorney's performance.[3] At the core of his argument is the allegation that, if his attorney had provided him with effective assistance, he would not have pled guilty. Accordingly, he con-

tends that his plea should be vacated because it was not made knowingly, intelligently, or voluntarily.

In reviewing a claim of ineffective assistance of counsel, this Court has adhered to the standards set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See, e.g., Armenakes v. State*, 821 A.2d 239, 245 (R.I. 2003); *Brennan v. Vose*, 764 A.2d 168, 171 (R.I.2001); *Brown v. Moran*, 534 A.2d 180, 182 (R.I.1987). We have stated that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsels conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Heath v. Vose*, 747 A.2d 475, 478 (R.I.2000) (quoting *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052).

■ In accordance with the standards set forth in *Strickland*, an applicant who is claiming ineffective assistance of counsel must satisfy both parts of a two-prong test in order to prevail. 466 U.S. at 687–88, 104 S.Ct. 2052. "First, the defendant must show that counsels performance was deficient.* * * Second, the defendant must show that the deficient performance prejudiced the defense." *Brown*, 534 A.2d at 182 (quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052); *see also Burke v. State*, 925 A.2d 890, 893 (R.I.2007); *Larngar*, 918 A.2d at 856.

**2.** See also *Doctor v. State*, 865 A.2d 1064, 1067 (R.I.2005); *Ouimette v. State*, 785 A.2d 1132, 1135 (R.I.2001).

**3.** Specifically Mr. Gonder contends that his trial counsel's assistance was ineffective because counsel allegedly: (1) failed to adequately investigate and interview witnesses while preparing for trial; (2) failed to have contact with Mr. Gonder in preparation for the defense; (3) failed to present an opening statement informing the jury of the diminish-

ed-capacity defense; (4) failed to properly cross-examine police officers during trial; (5) failed to appeal the denial of pretrial motions; (6) failed to offer evidence that the victim had been engaged in an extramarital affair with a member of the pertinent police department; (7) erroneously advised Mr. Gonder to plead guilty; and (8) failed to move for a withdrawal of the guilty plea on the basis of what he describes as "an incomplete plea colloquy."

With respect to the first prong of the *Strickland* test, in determining whether counsels performance was deficient, a strong (albeit rebuttable) presumption exists that counsel's performance was competent. *State v. Figueroa*, 639 A.2d 495, 500 (R.I.1994). With regard to the second prong of the *Strickland* test, "[p]rejudice exists if there is a reasonable probability that, absent counsel's deficient performance, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052).

## B

### Trial Counsel's Performance

It is noteworthy that, at the time that Mr. Gonder entered his guilty plea, the following colloquy took place in open court:

"THE COURT: Mr. Gonder, first let me ask you whether or not you have had full and frank discussion with your lawyers in regard to this proposed change of plea from one of not guilty to one of guilty to first degree murder.

"THE DEFENDANT: I have.

" * * *

"THE COURT: Mr. Gonder, did you sign this request to change your plea.

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Did you read it before you signed it?

"THE DEFENDANT: Not totally, no.

"THE COURT: We will take a recess.

"[DEFENSE COUNSEL]: Excuse me. I read it to him.

"THE COURT: I don't care. I want him to read it."

After this exchange, the court did in fact take a recess so that Mr. Gonder could read the plea agreement more fully. When the court reconvened, the colloquy between the trial justice and defendant continued as follows:

"THE COURT: Mr. Gonder, during the recess did you have the opportunity to read this document that you have indicated you signed?

"THE DEFENDANT: Yes, Your Honor.

"THE COURT: Do you have any difficultly understanding it?

"THE DEFENDANT: I don't believe so.

"THE COURT: How far did you go in school?

"THE DEFENDANT: High school.

"THE COURT: Have you had any drugs, alcohol or medication this morning?

"THE DEFENDANT: I had a prescription drug this morning.

"THE COURT: What?

"THE DEFENDANT: Zoloft.

"THE COURT: Does that have any bearing on your ability to understand the proceeding this morning?

"THE DEFENDANT: I don't think so.

"THE COURT: Any question in your mind about it?

"THE DEFENDANT: No, Your Honor.

" * * *

"THE COURT: Mr. Gonder, as you well know, you have a right to continue with this trial to its conclusion. During such trial you would have the opportunity to—through your counsel—to continue to cross-examine and confront the witnesses who are presented against you. The presumption of innocence would not disappear. It remains with you throughout the course of the trial. You have no obligation to testify. You would have no obligation to present witnesses or evidence, although you could have

done those things had you wanted to. It's my understanding that you would have, had this case continued. In any event, you would not have been obliged to do so. If I accept your plea, Mr. Gonder, you cannot withdraw it without permission of the Court. As you well know, murder in the first degree carries with it a mandatory life sentence. There's no discretion in the Court's hand with respect to the sentence. You understand that?

"THE DEFENDANT: Yes, I do.

"THE COURT: Has anybody forced you, or coerced you to enter this plea of guilty to first degree murder?

"THE DEFENDANT: No.

"THE COURT: Are you pleading guilty to this offense because, in fact, you did commit it?

"[DEFENSE COUNSEL]: With respect to that question Your Honor asked the defendant I would most respectfully ask the Court to review in its own mind—as the defendant has—the evidence that is presented—that has been presented. The defendant does not dispute the evidence that has been presented by the State today. There are statements he would like to make to the Court.

"THE COURT: There are two statements available to this defendant this morning. One is not guilty; one is guilty. Which is it, Mr. Gonder?

"THE DEFENDANT: Guilty.

"THE COURT: I'm satisfied that there is a factual basis for this charge; that there is knowing and intelligent waiver by this defendant with respect to all of the rights and privileges that he is giving up; that he is giving them up knowingly, voluntarily, and intelligently. The plea of guilty will be accepted."

After reviewing the entire colloquy between the trial justice and Mr. Gonder, it is clear to us that it constitutes an eminently rational basis for concluding that the applicant understood the consequences of pleading guilty and that he did not do so under force or coercion.[4] Mr. Gonder stated, under oath, that he had discussed the agreement with his attorney prior to entering his plea and that, although he had taken Zoloft[5] that morning, he nevertheless had no difficulty understanding the implications of his guilty plea.

■ This Court has previously held that "[t]he sole focus of an application for post-conviction relief filed by an applicant who has pled guilty is 'the nature of counsel's advice concerning the plea and the voluntariness of the plea. If the plea is validly entered, we do not consider any alleged prior constitutional infirmity.'" *Miguel v. State*, 774 A.2d 19, 22 (R.I.2001) (quoting *State v. Dufresne*, 436 A.2d 720, 722 (R.I. 1981)). The burden is on the applicant to demonstrate that the advice of his attorney "was not within the range of competence demanded of attorneys in criminal cases." *Dufresne*, 436 A.2d at 723; *see also Miguel*, 774 A.2d at 22. The applicant must further demonstrate that, but for his attorney's errors, he would not have entered a guilty plea, but rather would have proceeded to trial. *See Hassett v. State*, 899 A.2d 430, 434 (R.I.2006).

---

4. The fact that the trial justice took a recess specifically in order to give the defendant before him time in which to read the plea agreement fully is one indication of the careful manner in which the trial justice made sure that defendant's decision to change his plea was knowing and voluntary.

5. Zoloft is an oral drug most commonly used to treat depression. *Physician's Desk Reference* 2586 (61st ed.2007).

■ We are not persuaded that Mr. Gonder was denied effective assistance of counsel. His attorney acted well within the level of competence demanded of attorneys in criminal cases. The record reveals that, before the trial began, trial counsel conducted an extensive investigation of the case and interviewed several relevant witnesses. Counsel met with Mr. Gonder approximately fifteen times in person; in addition, the two conferred numerous times by telephone and by exchange of written correspondence. Defense counsel concluded that a defense of diminished capacity was the most appropriate defense. To that end, he hired an expert witness, Michael A. Ingall, M.D., to testify at trial in support of the diminished-capacity defense. Additionally, trial counsel submitted a motion to suppress defendant's taped confession.

■ It is true, as Mr. Gonder points out, that his counsel elected not to make an opening statement before the prosecution presented its case.[6] However, a decision as to when or if to make an opening statement is an inherently tactical decision. *See Vorgvongsa v. State*, 785 A.2d 542, 549 (R.I.2001); *State v. D'Alo*, 477 A.2d 89, 92 (R.I.1984). We perceive absolutely no error in this regard.

As the hearing justice noted in the course of denying the motion for postconviction relief, once the criminal trial began Mr. Gonder had the opportunity to observe for four trial days the unfolding of the prosecution's case—a case which included the introduction of his own taped confes-

sion. It is inconceivable that, having observed the prosecution's case for that length of time, he was not aware of the strength of the state's case against him,[7] and one can also well understand why his attorney would have advised him to enter into a plea agreement. If Mr. Gonder had not followed the advice of his attorney and had instead allowed the trial to continue, he ran the very real risk of receiving the much more severe sentence of life imprisonment without the possibility of parole. We agree with the trial justice that the prosecution's withdrawal of its request that defendant be sentenced to life imprisonment without the possibility of parole was "not an inconsequential relinquishment by the State." In view of the evidence that the state had presented and in view of the real possibility that his client might receive the harshest possible penalty permitted under Rhode Island law, the attorney's advice to his client that he plead to a negotiated sentence was well within the acceptable range of competence. We therefore hold that Mr. Gonder's claim of ineffective assistance of counsel is without merit.

Since we have determined that Mr. Gonder failed to show that his trial counsel's performance was deficient as required under the first prong of the *Strickland* test, we need not address the second prong of that test.

## II

### The Right of Allocution

■ Finally, Mr. Gonder contends that his guilty plea should be vacated due to

---

6. Rule 26.2 of the Superior Court Rules of Criminal Procedure permits a defendant to make an opening statement "just prior to the introduction of evidence by the State, or just prior to presenting his case." *Cf. State v. Bryant*, 888 A.2d 965, 970–71 (R.I.2006) (holding that defense is not allowed to make an opening statement unless it plans to pres-

ent evidence); *State v. DePina*, 810 A.2d 768, 773–75 (R.I.2002).

7. Indeed, during the hearing on the amended application for postconviction relief, the hearing justice described the prosecution's evidence against Mr. Gonder as "compelling" and "persuasive."

the fact that he was denied his right of allocution since the trial justice refused his request to make a statement on his own behalf before sentence was imposed.[8]

In the course of the extensive colloquy between the trial justice and Mr. Gonder in connection with the proposed change of plea, the following exchange occurred:

"THE COURT: Are you pleading guilty to this offense because, in fact, you did commit it?

"[DEFENSE COUNSEL]: With respect to that question Your Honor asked the defendant I would most respectfully ask the Court to review in its own mind—as the defendant has—the evidence that is presented—that has been presented. The defendant does not dispute the evidence that has been presented by the State today. There are statements he would like to make to the Court.

"THE COURT: There are two statements available to this defendant this morning. One is not guilty; one is guilty. Which is it, Mr. Gonder?

"THE DEFENDANT: Guilty."

The right of a defendant "[i]n all criminal prosecutions" to address the court before sentence is imposed is protected under the Rhode Island Constitution. Article 1, section 10, of the Rhode Island Constitution provides:

"In all criminal prosecutions, accused persons shall enjoy the right to a speedy and public trial, by an impartial jury; to be informed of the nature and cause of the accusation, to be confronted with the witnesses against them, to have compulsory process for obtaining them in their favor, to have the assistance of counsel in their defense, and *shall be at liberty to speak for themselves;* nor shall they be deprived of life, liberty, or property, unless by the judgment of their peers, or the law of the land." (Emphasis added.)

The emphasized words refer to the right of what is commonly called "allocution." *See State v. Vaccaro,* 121 R.I. 788, 789–93, 403 A.2d 649, 650–52 (1979); *see also Robalewski v. Superior Court,* 97 R.I. 357, 358–60, 197 A.2d 751, 752–54 (1964) (summarizing the history of the right of allocution).[9] Moreover, Rule 32(a)(1) of the Superior Court Rules of Criminal Procedure specifically directs the trial court to inquire personally of the defendant as to whether or not he or she wishes to exercise the right of allocution.[10] In addition, this Court has repeatedly insisted that this right must be respected. *See, e.g., State v. Brown,* 528 A.2d 1098, 1105 (R.I.1987); *State v. Nico-*

---

**8.** We note that Mr. Gonder did not make reference to a denial of his right of allocution in his initial application for postconviction relief; he asserted this argument for the first time in his amended postconviction relief application. Even though it is quite probable that the applicant has waived his right to pursue this argument, for the purposes of this opinion we shall assume without deciding that defendant's argument was properly preserved for appellate review.

**9.** The relevant definition of "allocution" as set forth in Black's Law Dictionary 83 (8th ed.2004) is as follows: "An unsworn statement from a convicted defendant to the sentencing judge or jury in which the defendant can ask for mercy, explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the impending sentence." It is a right that was recognized in England long before the American colonies became independent. *See Green v. United States,* 365 U.S. 301, 304, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961).

**10.** Rule 32(a)(1) of the Superior Court Rules of Criminal Procedure provides as follows: "Before imposing sentence the court * * * shall address the defendant personally and ask the defendant if he or she wishes to make a statement in his or her own behalf and to present any information in mitigation of punishment."

*letti,* 471 A.2d 613, 617–18 (R.I.1984); *Leonardo v. State,* 444 A.2d 876, 877–78 (R.I. 1982); *Robalewski,* 97 R.I. at 358–60, 197 A.2d at 752–54 (1964). Defense counsel's request on behalf of his client was utterly clear: "There are statements he would like to make to the Court." [11] As such, there is no doubt that the trial justice erred when he summarily rejected counsel's request that the defendant be allowed to exercise his right of allocution prior to sentencing.[12]

▋ The right to speak on one's behalf before a sentence is imposed is a precious and venerable one. *Robalewski,* 97 R.I. at 358, 197 A.2d at 753; *see also Vaccaro,* 121 R.I. at 791, 403 A.2d at 650–51.[13] Although Mr. Gonder was regrettably deprived of his right of allocution, that deprivation did not result in the life sentence imposed by the trial justice being an *illegal sentence,* which we would be required to vacate; it was rather a *legal sentence illegally imposed.*[14] *See State v. DeCiantis,* 813 A.2d 986, 990–93 (R.I.2003). When a legal sentence has been illegally imposed, Rule 35(a) of the Superior Court Rules of Criminal Procedure authorizes

the trial court to correct the sentence.[15] However, the same rule states that a motion to correct a sentence must be filed within 120 days after the judgment has become final. Mr. Gonder did not file a motion to reduce or correct his sentence within that time period, and therefore there is no basis for a remand so that he might allocute and be resentenced.

▋ We would add that, even if Mr. Gonder had filed a timely motion to correct his sentence and was subsequently allowed to exercise his right of allocution, the real-world result would be the same, since life imprisonment is the mandatory sentence for first-degree murder, and the right of allocution "does not vest in the judiciary the power to fashion discretionary sentences independently." *Vaccaro,* 121 R.I. at 793, 403 A.2d at 651; *see* G.L. § 11–23–2 ("Every person guilty of murder in the first degree shall be imprisoned for life."). While the denial of Mr. Gonder's right of allocution in this case was regrettable, the fact is that he has not incurred any tangible harm as a result.[16]

---

11. Of course, Rule 32(a)(1) does not mandate that the defendant or defense counsel make such a request; rather, it requires the trial justice to "address the defendant personally" to determine whether he or she wishes to exercise the right of allocution.

12. We are not unsympathetic with the trial justice's rather peremptory reaction to defense counsel's indication that "[t]here are statements [defendant] would like to make to the Court." The trial justice was undoubtedly perturbed by the fact that four trial days, replete with graphic testimony, had passed before defendant decided to change his plea. Nonetheless, constitutional mandates are constitutional mandates.

13. We take this occasion once again to emphasize the importance of the constitutional right of allocution. That right must be respected even in situations in which statutory mandates make the actual sentence a foregone conclusion.

14. The Reporter's Notes accompanying Rule 35(a) of the Superior Court Rules of Criminal Procedure define a sentence illegally imposed as "one that does not conform to the procedures required by these rules for imposition of sentence-for example, failure to accord a defendant his right of allocution under Rule 32." *See State v. DeCiantis,* 813 A.2d 986, 991 (R.I.2003).

15. Rule 35(a) provides in pertinent part as follows: "The court may correct a sentence imposed in an illegal manner and it may reduce any sentence when a motion is filed within one hundred and twenty (120) days after the sentence is imposed * * *." *See DeCiantis,* 813 A.2d at 987.

16. Mr. Gonder raised a variety of other issues in his amended application for postconviction relief. *See* footnote 3, *supra.* We have reviewed those issues, but we do not find them to be persuasive or determinative.

## Conclusion

For the reasons set forth herein, we affirm the ruling of the Superior Court denying the application for postconviction relief. The papers in the case may be remanded to the Superior Court.