Eddy **GUERRERO**

v.

**STATE of Rhode Island.**

**No. 2010–429–Appeal.**

Supreme Court of Rhode Island.

July 12, 2012.

Martin D. Harris, Esq., for Applicant.

Christopher R. Bush, Department of Attorney General, for State.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice ROBINSON, for the Court.

The applicant, Eddy Guerrero, appeals from the denial of his application for post-conviction relief. The applicant's sole contention on appeal is that the hearing justice erred in holding that his trial counsel provided effective assistance of counsel prior to and during the applicant's plea of *nolo contendere*. Specifically, applicant contends: (1) that his counsel failed to obtain an interpreter for him at the time of the hearing on his motion to suppress certain evidence and at the time of his eventual plea; (2) that, prior to his execution of the plea form, his counsel failed to properly explain to him the essential elements of the offense to which he ultimately pled *nolo contendere;* (3) that his trial counsel failed to meet with him in a setting conducive to meaningful attorney-client communications; (4) that, by not conducting a sufficient investigation, his counsel failed to properly prepare for the suppression hearing; and (5) that the hearing justice erred in failing to address the prejudice component of the analysis relative to ineffective assistance of counsel allegations that is described in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After reviewing the record and considering the written and oral submissions of the parties, we are satisfied that cause has not

been shown and that this appeal may be resolved without further briefing or argument.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

### A

### The Applicant's Plea on April 19, 2006

On April 19, 2006, after the trial court denied his motion to suppress evidence obtained from a search of a vehicle which applicant was operating,[1] applicant pled *nolo contendere* to a charge of possession of over one kilogram of cocaine. As a result of that plea, the trial justice[2] sentenced him to twenty years at the Adult Correctional Institutions (ACI), with seven of those years to serve and the remaining years suspended with probation.[3]

### B

### The Application for Postconviction Relief and the Relevant Hearing

On October 29, 2007, applicant filed an application for postconviction relief, alleging (1) that he had not received effective assistance of counsel during the time leading up to his eventual plea of *nolo contendere* and (2) that his plea was not knowing and intelligent.[4] Specifically, applicant

contended that he had been denied: (1) the statutorily based right to be adequately apprised of the potential immigration consequences of his plea and (2) the constitutionally based right to effective assistance of counsel.

An evidentiary hearing with respect to the application for postconviction relief was held on May 17, 2010 in the Superior Court for Washington County.

At that hearing, applicant's wife of seventeen years, Carmen Guerrero, testified. She stated that, in August of 2005, she was living with applicant and her children in Puerto Rico. She said that her husband was detained by "Immigration" when he appeared for an interview relative to obtaining citizenship. Mrs. Guerrero further testified that, as a result of that detainer, applicant was "extradited" from Puerto Rico to Rhode Island on August 8, 2005.

Mrs. Guerrero stated that she had met the counsel who had represented applicant in the proceedings that eventuated in his plea of *nolo contendere*; she added that she had also attended each of applicant's court appearances in the Superior Court. She testified that, on days when there were court proceedings involving her husband, his trial counsel would, during the breaks, "give [her] a few minutes of his time and [would] explain whatever was happening in there." Mrs. Guerrero further testified that, on "some court dates," trial counsel told her that he had seen

---

1. The record before us contains a copy of the transcript of the suppression hearing (but not the bench decision) as an exhibit to one of applicant's numerous filings in the Superior Court relative to his application for postconviction relief.

2. We pause to note that the trial justice was also the hearing justice at the postconviction relief hearing.

3. The facts set forth in the first paragraph of the "Facts and Travel" section have been gleaned from the bench decision of the hearing justice.

4. In his application for postconviction relief, applicant stated that, at the time of the plea, he was an "alien resident" of the United States and had not been advised by counsel of the immigration consequences of his plea of *nolo contendere*.

applicant at the cellblock prior to the proceedings in court.

Mrs. Guerrero testified that, when she first met with trial counsel, she told him that applicant "doesn't speak much English at all." She elaborated that she told counsel that applicant "has very big difficulties speaking and understanding English so you need somebody that can explain to him what's going on, that can ask him so he can give you the right information, otherwise he will not understand." Mrs. Guerrero stated that applicant's trial counsel responded that he would "get somebody" whenever he visited the ACI.[5]

Mrs. Guerrero further testified that, in the week prior to the scheduled start of the trial, she became concerned that her husband's trial counsel was not prepared. She stated that she spoke with counsel regarding her concerns and that he stated that "they have found every witness involved in the case[;] that the evidence was there[; and that] they didn't think we stood a chance, a good chance."

Mrs. Guerrero further testified that, in April of 2008, after he had pled *nolo contendere*, applicant was deported from the United States to the Dominican Republic. She further testified that, during the deportation proceedings at the Boston Immigration Court, an interpreter was present for applicant's benefit.

Mrs. Guerrero additionally testified that, over the duration of their marriage, she had had the opportunity to observe applicant's English speaking, reading, and writing ability—as well as his Spanish speaking and writing ability. She further stated that both she and her children are fluent in Spanish and that they would speak with applicant in Spanish in their home. Mrs. Guerrero testified that she served as applicant's interpreter by translating from Spanish to English for him in the course of "daily living activities, like going to the bank, * * * setting up a service for car, * * * buying something at a store that he wanted to relate to an associate in the store and he couldn't explain what he wanted."

Mrs. Guerrero further testified that applicant could speak "[s]ome" English; but she then explained that by "[s]ome" English she meant "very little." She added that, "from what [she could] observe, he tries to explain things and most of the times, * * * 90 percent of the times, he will get stuck halfway through the sentence or the idea and he will look around for somebody to help him out and usually it was [she]." She further testified that she had observed her husband write in English when making a shopping list or writing checks; she stated, however, that his writing checks in English "didn't always work."

On cross-examination, Mrs. Guerrero acknowledged that applicant's trial counsel had filed a motion to suppress the cocaine that was seized from the vehicle that applicant was operating when he was stopped by the police. She further acknowledged that she was aware that the court had conducted a full hearing on the motion to suppress.

Miguel Gomes also testified at the postconviction relief hearing; he testified that he "work[ed] at the Rhode Island Department of Corrections as an ESL teacher"[6] and that he had taught ESL for approximately twenty-seven years. Mr. Gomes

---

**5.** We infer from the context that trial counsel's alleged assurances to Mrs. Guerrero that he would "get somebody" referred to a Spanish–English interpreter.

**6.** The abbreviation ESL has been defined as "English as a second language." The American Heritage Dictionary of the English Language 608 (4th ed.2009).

testified that he recalled applicant as being one of his students and that he had presented him with a certificate of participation (but not a certificate of achievement) in the ESL class.[7] (That certificate of participation was admitted as a full exhibit at the hearing.) Mr. Gomes further stated that applicant earned the certificate of participation due to the fact that he began attending the class in mid-March and certificates were presented in June. Mr. Gomes elaborated that a certificate of participation means that a participant "was in class, did all the assignments, but he was not [in the class] long enough to excel;" he added that "we usually give [a certificate of] participation for six months or less."

Mr. Gomes further testified that he taught a "basic ESL group" as well as a "beginning ESL group"—the latter being "a little more advanced" than the basic group. Mr. Gomes testified that applicant was in the "beginning ESL group." He stated that applicant did "all the work" in the class and came to class every day—sometimes twice a day. Mr. Gomes added that applicant was one of the better students within his group.

With respect to the standardized test that the ESL students take, Mr. Gomes testified that applicant's score on the English reading comprehension portion of that test translated into a 9.6 grade level[8]—that figure signifying the comprehension level of someone in the sixth month of grade nine. Mr. Gomes stated that a person with such a score would be able to read "[b]asic[ ] forms," such as a restaurant menu or a phonebook, and would be able to fill out applications.

The next witness to testify was Jeanne Church.[9] Ms. Church testified that she was employed by the Office of the Public Defender in a position known as "Intake" and had been employed there for eight years. Ms. Church testified that her duties in Intake are as follows: "I interview the client to see if they're financially [eligible] and I take basic facts about their case." She stated that she has performed "[h]undreds" of financial interviews.

Ms. Church testified that she completed applicant's intake form at the Public Defender's Office at the Washington County Courthouse. (That document was admitted as a full exhibit at the hearing.) Ms. Church further testified that she is not bilingual. She stated that, with respect to applicant's intake form, under the heading on the form relating to a potential client's "languages," she marked "English." She added that she spoke with applicant in English and that she obtained all of the information on the form in English. Ms. Church further testified that applicant had spoken to her in "good English," and she said that she could not have interviewed him if he could not speak English.

Megan Clingham next testified; she stated that, from 1992 until 2008, she was employed as a staff attorney in the Office of the Public Defender. Attorney Clingham stated that, on September 20, 2005, she spoke with applicant and advised him that his trial counsel was engaged in a murder trial and that she would be "cover-

7. We pause to note that applicant's certificate was dated June 15, 2007. Accordingly, it is evident that applicant had participated in the ESL class *after* he pled *nolo contendere*.

8. Mr. Gomes testified that applicant tested at a 3.6 grade level for spelling and at a 2.7 grade level for grammar.

9. After Mrs. Guerrero and Mr. Gomes completed their testimony, the hearing was continued until September 1, 2010. The hearing justice explained that the hearing was continued to that date "based upon the unavailability" of applicant's trial counsel.

ing" that attorney's cases. She stated that she then asked applicant whether he would like to speak with his trial counsel about his case or whether he would like to speak with her; he responded that he would prefer to wait for his trial counsel, who had already been representing him. Attorney Clingham testified that, although she did not speak with applicant about the facts of his case, she did briefly discuss with applicant that he was the subject of an "immigration detainer." She added that applicant stated that he was aware of the immigration detainer and that he had spoken with someone from "INS," who told him that, if he was convicted, he would be deported. She stated that she then told applicant that he should speak with an immigration attorney and that applicant responded that he had previously spoken with such an attorney, who also informed him that he would be deported if convicted.

Attorney Clingham testified that she is not fluent in any language other than English and that, when she spoke with applicant, she did not utilize an interpreter because applicant spoke English. She elaborated that applicant was "fluent enough" in English so that she did not feel the need to ask for an interpreter; she said that she was able to have a conversation with him.

The applicant's trial counsel was next called as a witness at the hearing. He testified that he had been licensed to practice law in Rhode Island for approximately nineteen years.[10] Reviewing the public defender's tracking sheet, trial counsel stated that he made an entry on August 30, 2005 in order to "record what the substance of the first pretrial conference after [he] en-

tered [his] appearance entailed." He further testified that, at that point in time, he did not yet have a discovery package, and he said that that fact was noted on the tracking sheet. Trial counsel further testified that he spoke with applicant that day, as was his practice with all clients when a pretrial conference is involved. He further stated that, at that pretrial conference, the matter was reassigned to September 20, 2005 so as to give him the opportunity to receive discovery. Trial counsel further testified that, although he did not "track" any of his interviews with applicant, that fact did not mean that he had not conducted any interviews.

The applicant's trial counsel additionally testified that, on September 14, 2005, at applicant's request, he mailed him a copy of the discovery package. Trial counsel further stated that, according to Attorney Clingham's notes, on September 20, 2005, the state made a sentencing recommendation with respect to the instant case.

Trial counsel further testified that he recalled representing applicant at a suppression hearing. He stated that he had taken notes during the suppression hearing "[b]ecause [he] would be cross-examining the witnesses at the suppression hearing and, obviously, what they testified to on direct examination is of critical importance." When asked by applicant's postconviction relief attorney whether he had prepared for the suppression hearing, trial counsel replied in the affirmative. Trial counsel acknowledged, however, that he did not have any notes that would reflect such preparation. He affirmed that he does not prepare for a suppression hearing by creating "lines of direct examination or

---

10. Applicant's trial counsel testified that, prior to testifying at the postconviction relief hearing, he reviewed the following materials: his file; a transcript of the grand jury proceedings that were conducted in connection with this case; a transcript of the suppression hearing; a transcript of the plea proceedings; and Mrs. Guerrero's testimony at the postconviction relief hearing.

cross-examination" in writing; he testified that, instead, he reviews the materials that are relevant (or which he perceives to be relevant) to the hearing in question. He added that he is "blessed with the fact that [he] ha[s] a pretty sharp memory." Trial counsel elaborated that he finds "papers to be generally distracting when [he is] examining a witness." He stated that, instead, he prepares lines of questioning "in [his] head." Trial counsel stated that the primary issue at the suppression hearing was whether or not applicant had voluntarily consented to a search of the vehicle which he was driving when the police stopped him.

Trial counsel testified that he recalled it being suggested [11] that, if applicant "were to plead guilty," he would receive a sentence involving either seven or seven-and-a-half years to serve—which he described as being "a substantial departure from the initial offer in the case, which had been 30 years total with 15 years to serve." Trial counsel testified that he then proceeded to communicate the more recent offer to applicant; he said that applicant agreed to accept it "without reservation." Trial counsel acknowledged that he communicated the offer in question to applicant in English in the cellblock.

Trial counsel further testified that he is not fluent in any languages other than English and that he did not utilize the services of an interpreter when speaking with applicant. He further testified that applicant had a "bit of an accent," but he added that he "had no problem" understanding applicant. Trial counsel also stated that they had numerous conversations and that applicant never indicated to him, either orally or by any other means, that he was not comprehending what was being said at the suppression hearing, at the plea proceedings, or in any other con-

text. In addition, trial counsel stated that he had numerous conversations with Mrs. Guerrero, who never indicated to him that applicant had any difficulty understanding English. Trial counsel stated that, had Mrs. Guerrero so indicated, he would have utilized the services of an interpreter "from there on in." Trial counsel stated that no Spanish interpreter was utilized at the time of the plea proceeding because he did not believe that one was necessary; he added that he also did not believe that one was needed at the time of the suppression hearing. When questioned by applicant's postconviction relief attorney, trial counsel acknowledged that the "rights waiver form" attached to the indictment was in Spanish, yet he later testified that he was not aware of any of the discovery documents being translated into Spanish for applicant.

Trial counsel also acknowledged on cross-examination that, during the plea colloquy, applicant responded that he did not understand the following statement and question by the justice of the Superior Court who was presiding:

"You understand, Mr. Guerrero, that you are giving up your right to continue with the trial that has been started in this particular matter, and yesterday, the Court—the parties concluded the selection of a jury in this matter. By pleading nolo contendere, the plea is the same as a plea of guilty and you're giving up your right to continue having a trial at which the jury would have been required to decide the facts as presented by the parties in this matter. You do understand that, do you not, sir?"

Trial counsel acknowledged that the just-quoted statement and question were rather lengthy; he said that, although he did not specifically recall conferring with appli-

11. Trial counsel could not recall who specifically had suggested the plea offer.

cant about it, he "would imagine" that he spoke with applicant in order to rephrase what the trial justice had said. Although he did not remember exactly what he had said to applicant, trial counsel did state that, after their discussion, applicant said to the court: "Yes, I understand."

The applicant's postconviction relief attorney quoted the following statement made by applicant during the plea colloquy: "I didn't know that those drugs were there." Trial counsel testified that, prior to applicant's signing the plea form, he reviewed it with him. He stated that he advised applicant that the prosecutor would be placing on the record the facts that the state stood ready to prove should the case go to trial. He further advised applicant that, in order for the plea to be accepted by the court, applicant would have to admit and acknowledge that he did, in fact, possess the stated amount of cocaine. He stated that, if applicant had said to him, "[t]hat's absolutely not true," then he would not have allowed him to change his plea.

Trial counsel testified that the transcript of the plea colloquy indicates that applicant conferred with him four separate times on that occasion; however, he said that he could not recall what those discussions concerned. Additionally, trial counsel acknowledged that he reviewed with applicant only the English language version of the plea form because, through the course of his representation of applicant, he had formed the impression that applicant understood English and that he could communicate in English both orally and in writing.

Trial counsel testified that he remembered advising applicant on several occasions that, given the charge he was facing, he *would* be deported, not that he *might* be deported, if he should opt to enter a plea of *nolo contendere* or be convicted

after exercising his right to trial. Trial counsel elaborated that, on the morning that applicant changed his plea, he told him that "it was extraordinarily unlikely that he'd be allowed to remain in the country as a result of [the] plea." Trial counsel further stated that, before applicant signed the plea form, he determined that applicant was able to understand his constitutional rights.

Trial counsel additionally affirmed that he was able to have "quality communication" with applicant at the courthouse without the need for traveling to the ACI On cross-examination, trial counsel stated that, when he spoke with applicant at the courthouse, he had the option of speaking with him in one of the holding cells (where other people would be present) or in one of the attorney conference rooms. He further testified that he was under the impression that the attorney conference rooms were very secure, and he said that there is "a very thick door that leads into both halves of the conference rooms; that is to say, there are two very thick doors and they're only—you can only open them, apparently, by way of a key from the outside." Trial counsel further stated that he met with applicant in one of those conference rooms when he addressed matters of substance which were of a confidential nature.

C

**The Ruling on the Application for Postconviction Relief**

On September 30, 2010, the hearing justice rendered his decision from the bench. He began by noting that, on March 19, 1990, applicant was driving a motor vehicle that was pulled over on Interstate 95 for speeding. The hearing justice further noted that, after conducting what was "asserted [to be] a consensual search of the interi-

or of the vehicle," the State Police found more than three kilograms of cocaine secreted within a console. The hearing justice stated that applicant was then arrested and thereafter charged with possession of over one kilogram of cocaine.

The hearing justice noted that applicant was arraigned in Superior Court in June of 1990, at which time he was represented by private counsel; he added that applicant eventually posted surety bail. The hearing justice stated that trial was scheduled to commence in October of 1991 and that a bench warrant was issued when applicant failed to appear at his trial.

The hearing justice stated that applicant was presented before the court in August of 2005. The hearing justice further stated that, at that point in time, applicant requested to be referred to the Office of the Public Defender and that someone from that office thereafter interviewed applicant to determine preliminary facts and his financial eligibility. He proceeded by stating that, ultimately, applicant's trial counsel (an assistant public defender) entered his appearance.

The hearing justice noted that, between August 26, 2005 and January 25, 2006, applicant's case came before the court approximately seven different times with respect to various pretrial matters. The hearing justice noted that, on April 11, 2006, applicant filed a motion to suppress the tangible evidence seized from the car which applicant was operating at the time of his arrest; the applicant alleged the following three grounds as calling for suppression: (1) that the stop of the vehicle was without probable cause; (2) that applicant's arrest was without probable cause; and (3) that the evidence (the cocaine) was obtained in a manner that rendered it the "fruit of the poisonous tree" in violation of the Fourth Amendment to the United States Constitution and article 1, section 6 of the Rhode Island Constitution. The hearing justice noted that, after an evidentiary hearing on the motion to suppress, the court had denied same and had scheduled jury selection.

The hearing justice further stated that, on April 19, 2006, after the jury had been sworn, the state and applicant (through trial counsel) renewed their plea negotiations; the result of those negotiations was that applicant entered a plea of *nolo contendere* to possession of over one kilogram of cocaine, and he received a sentence of twenty years, with seven years to serve and thirteen years suspended, with probation.

The hearing justice proceeded to note that an interpreter was never present to assist applicant at any proceedings or hearings between August of 2005 and April of 2006; additionally, he noted that there was never a request for an interpreter by defense counsel, by applicant, or by the court *sua sponte.*

The hearing justice then reviewed the substance of the application for postconviction relief, the state's objection thereto, and the evidentiary hearing that had been conducted with respect to that application.

The hearing justice found the statements contained in applicant's affidavit to be self-serving; in light of that fact and the fact that there had been no opportunity for cross-examination of applicant, the hearing justice found applicant's "factual claims in his affidavit" to lack "credibility." In addition, the hearing justice found that the testimony of Mrs. Guerrero was lacking in the requisite degree of credibility that would compel the court to accept her testimony.

The hearing justice, however, found the testimony of Mr. Gomes (the ESL teacher) to be, "as a whole[,] credible."

The hearing justice also found Attorney Clingham's testimony to be "extremely credible;" indeed, he said that there were no instances in which her testimony "was anything other than completely credible."

The hearing justice deemed the testimony of applicant's trial counsel to be credible; specifically, he found that there were no instances in which trial counsel exaggerated his testimony. Moreover, he did not find that trial counsel was resistant to answering the questions posed by applicant's postconviction relief counsel.

The hearing justice then succinctly and accurately summarized the law relative to applications for postconviction relief. He then proceeded to find that a tactical decision had been made by trial counsel when he chose not to present applicant as a witness at the suppression hearing. The court accordingly found that it could not consider that choice to be ineffective assistance of counsel because it was a tactical decision—which, even if it were ill-advised, would not, by itself, constitute ineffective assistance of counsel. In addition, the hearing justice stated that applicant had failed to prove that an interpreter was required, and he accordingly ruled that trial counsel was not ineffective in not obtaining the services of an interpreter because applicant had a sufficient comprehension of English. The hearing justice based that determination upon the testimony of Ms. Church, Attorney Clingham, and trial counsel, as well as the evidence that had been submitted concerning applicant's ESL classes.

Accordingly, the hearing justice stated that applicant had failed to satisfy the first component of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)—*viz.*, that trial counsel's performance was deficient. For that reason, the hearing justice denied applicant's application for postconviction relief. The applicant thereafter timely appealed.

## II

### Standard of Review

■ The statutorily created remedy of postconviction relief is "available to any person who has been convicted of a crime and who thereafter alleges either that the conviction violated the applicant's constitutional rights or that the existence of newly discovered material facts requires vacation of the conviction in the interest of justice." *Mattatall v. State*, 947 A.2d 896, 901 (R.I. 2008) (citing G.L.1956 § 10–9.1–1); *see also State v. Steele*, 39 A.3d 676, 680 (R.I. 2012); *DeCiantis v. State*, 24 A.3d 557, 569 (R.I.2011). A postconviction relief applicant must prove, "by a preponderance of the evidence, that such relief is warranted in his or her case." *Brown v. State*, 32 A.3d 901, 907 (R.I.2011) (internal quotation marks omitted); *see also Spratt v. State*, 41 A.3d 984, 988 (R.I.2012); *Steele*, 39 A.3d at 680.

■ In our review of a hearing justice's rulings in the postconviction relief context, we shall not disturb his or her factual findings "absent clear error or a showing that the [hearing] justice overlooked or misconceived material evidence * * *." *Chapdelaine v. State*, 32 A.3d 937, 941 (R.I.2011) (internal quotation marks omitted); *see also State v. Thomas*, 794 A.2d 990, 993 (R.I.2002). We further note that this Court will not disturb credibility determinations "by a postconviction-relief hearing justice unless the defendant demonstrate[s] by a preponderance of the evidence that the [hearing] justice was clearly wrong." *Rice v. State*, 38 A.3d 9, 17 n. 11 (R.I.2012) (alterations in original) (internal quotation marks omitted). Nevertheless, we review in a *de novo* manner any postconviction relief determination "involving

questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights." *Gordon v. State*, 18 A.3d 467, 473 (R.I. 2011) (internal quotation marks omitted); *see also DeCiantis*, 24 A.3d at 569.

### III

### Analysis

### A

### The Ineffective Assistance of Counsel Contention

■ We preliminarily note that the decision to enter a plea of *nolo contendere* [12] "is not one to be taken lightly." *See Cote v. State*, 994 A.2d 59, 63 (R.I.2010). As such, in the case of someone who has entered a plea of *nolo contendere*, "[t]he sole focus of an application for post-conviction relief * * * is the nature of counsel's advice concerning the plea and the voluntariness of the plea." *Gonder v. State*, 935 A.2d 82, 87 (R.I.2007) (alteration in original) (internal quotation marks omitted); *see also Torres v. State*, 19 A.3d 71, 79 (R.I.2011); *Cote*, 994 A.2d at 63; *Hassett v. State*, 899 A.2d 430, 434 (R.I.2006); *Miguel v. State*, 774 A.2d 19, 22 (R.I.2001).[13] In addition, the burden is on the applicant to demonstrate that "the advice was not within the range of competence demanded of attorneys in criminal cases." *Tollett v. Henderson*, 411 U.S. 258, 266, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (internal quotation marks omitted); *see also Gonder*, 935 A.2d at 87.

In considering a claim of ineffective assistance of counsel, this Court conducts its evaluation pursuant to the criteria set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Page v. State*, 995 A.2d 934, 942 (R.I.2010); *see also Spratt*, 41 A.3d at 993; *Chapdelaine*, 32 A.3d at 941; *Brennan v. Vose*, 764 A.2d 168, 171 (R.I.2001). We have elaborated that " '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *Heath v. Vose*, 747 A.2d 475, 478 (R.I.2000) (alteration in original) (quoting *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052); *see also Chapdelaine*, 32 A.3d at 941–42; *Rodriguez v. State*, 941 A.2d 158, 162 (R.I.2008).

■ Under the two-pronged standard enunciated in *Strickland*, an applicant must first demonstrate that "counsel's performance was deficient, to the point that the errors were so serious that trial counsel did not function at the level guaranteed by the Sixth Amendment." *Brennan*, 764 A.2d at 171; *see also Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *Page*, 995 A.2d at 942; *Rodriguez*, 941 A.2d at 162. A trial attorney's representation of his or her client will be deemed to have been ineffective under that criterion only when the court determines that it fell "below an objective standard of reasonableness." *Brennan*, 764 A.2d at 171; *see also Rice*, 38 A.3d at 17; *Brown v. State*, 964 A.2d 516, 527 (R.I.2009); *Rodriguez*, 941 A.2d at 162.

■ If (but only if) it is determined that there was deficient performance, the court

---

12. "In Rhode Island, a plea of nolo contendere is treated as a guilty plea." *Cote v. State*, 994 A.2d 59, 63 (R.I.2010).

13. We pause to note that the principle articulated in the text "does not bar appeal of claims that the applicable statute is unconstitutional or that the indictment fails to state an offense." *See Torres v. State*, 19 A.3d 71, 79 (R.I.2011) (internal quotation marks omitted). The applicant in the case at bar, however, has made neither of those arguments.

proceeds to the second prong of the *Strickland* test, pursuant to which the applicant must show that the "deficient performance was so prejudicial to the defense and the errors were so serious as to amount to a deprivation of the applicant's right to a fair trial." *Brennan,* 764 A.2d at 171; *see also Rice,* 38 A.3d at 17; *Rodriguez,* 941 A.2d at 162; *Young v. State,* 877 A.2d 625, 629 (R.I.2005); *Hampton v. State,* 786 A.2d 375, 381 (R.I.2001).

## B

### The Alleged Necessity for an Interpreter

The applicant contends that his trial counsel should have employed an interpreter to make sure that he understood the "legal defenses."

■ General Laws 1956 § 8–19–1 declares that "[i]t is the intent of the [General Assembly] * * * to provide interpreters to non-English speaking persons in criminal proceedings before the state courts in Rhode Island * * *." That statute is meant to "guarantee the rights of persons who, because of a non-English speaking background, are unable to readily understand or communicate in the English language * * *." *Id.* But it must also be borne in mind that, for the absence of an interpreter to constitute reversible error, an applicant must show "actual, irremediable prejudice." *State v. Lopez–Navor,* 951 A.2d 508, 513 (R.I.2008).

■ In the case at bar, applicant has failed to demonstrate any such prejudice. Specifically, Mr. Gomes, an ESL teacher at the Department of Corrections, testified that, on a standardized placement test, applicant demonstrated that he possessed the reading comprehension level of some-

one in the sixth month of grade nine. The hearing justice found Mr. Gomes' testimony to be, "as a whole" credible.

In addition, the hearing justice noted that, although Ms. Church (the Office of the Public Defender "Intake" employee) had not been qualified as an expert, she offered a lay opinion that applicant spoke to her in "good English."

The hearing justice also recounted the testimony of Attorney Clingham, who testified that she recalled speaking to applicant in English. The hearing justice found the testimony of Attorney Clingham to be "extremely credible."

The hearing justice further noted that trial counsel testified that all of the conversations that he had with applicant were in English; he also noted that counsel stated that there never was a time when he was unable to understand what applicant was saying to him. The hearing justice deemed trial counsel's testimony to be credible, and he expressly found that there were no instances in which he exaggerated his testimony.

In contrast, the hearing justice found the testimony of Mrs. Guerrero (applicant's wife) to be lacking in "the requisite degree of credibility which would compel the [c]ourt to accept her testimony." Accordingly, the hearing justice did not accept her testimony with respect to what she said was a lack of a basic understanding of English on applicant's part.

Based on the just-outlined testimony and the clearly articulated credibility determinations made by the hearing justice, it is our judgment that the hearing justice did not err in concluding that, trial counsel, in choosing not to utilize the services of an interpreter, did not provide ineffective assistance of counsel.[14]

14. In his supplemental statement to this Court filed pursuant to Article I, Rule 12A of

the Supreme Court Rules of Appellate Procedure, applicant relies upon *United States ex*

## C

### The Essential Elements of the Plea

#### 1. The Immigration Consequences

▪ The applicant next contends that his trial counsel failed to advise him of the essential elements of the plea—and, significantly, of any immigration consequences of the plea. In *Padilla v. Kentucky,* —— U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), the United States Supreme Court recognized that "as a matter of federal law, deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on non-citizen defendants * * *." *Id.* at 1480 (footnote omitted). The Court held that, consequently, in order "to ensure that no criminal defendant—whether a citizen or not—is left to the mercies of incompetent counsel[,] * * * counsel must inform her [or his] client whether his plea carries a risk of deportation." *Id.* at 1486 (citation

*rel. Negron v. New York,* 310 F.Supp. 1304 (E.D.N.Y.1970), for the proposition that an indigent defendant who has "obvious difficulty with the language" has a right to have "an interpreter to translate from a defendant's native language into English when the defendant is on the stand, and from English into the defendant's native language when others are testifying." In the opinion affirming that district court decision, the United States Court of Appeals for the Second Circuit stated that it is a "nearly self-evident proposition that an indigent defendant who could speak and understand *no* English would have a right to have his trial proceedings translated so as to permit him to participate effectively in his own defense, provided he made an appropriate request for this aid." *United States ex rel. Negron v. New York,* 434 F.2d 386, 389 (2d Cir.1970) (emphasis added); *see also State v. Roman,* 224 Conn. 63, 616 A.2d 266, 270 (1992). *See generally* Daniel J. Procaccini, *What We Have Here is a Failure to Communicate: An Approach for Evaluating Credibility in America's Multilingual Courtrooms,* 31 B.C. Third World L.J. 163, 172 (2011) (identifying *Negron* as a "seminal case").

and internal quotation marks omitted); *see also Neufville v. State,* 13 A.3d 607, 612 (R.I.2011).

In the instant case, after our thorough review of the record of the postconviction relief hearing, we are satisfied that the hearing justice did not commit clear error in concluding that trial counsel was not ineffective given his finding that trial counsel adequately warned applicant of the immigration consequences of his plea. At the postconviction relief hearing, trial counsel testified as to the plethora of times that he had discussed "at some length" with applicant that, if he pled *nolo contendere,* he *would* be deported. Significantly, trial counsel stated that he "remember[ed] spending a fair amount of time with [applicant] regarding what [trial counsel] perceived to be the draconian immigration consequences that would flow from either a nolo contendere plea or a conviction after trial." Trial counsel additionally stated

In *United States v. Carrion,* 488 F.2d 12, 14 (1st Cir.1973), however, the United States Court of Appeals for the First Circuit recognized that "[t]he status of the right [to an interpreter] becomes less certain * * * where * * * the defendant has some ability to understand and communicate, but clearly has difficulty." Noting that that determination is "likely to hinge upon various factors," the First Circuit held that trial courts must be "granted *wide discretion* in determining whether an interpreter is necessary." *Id.* (emphasis added).

The facts of the instant case are similar to those in *Carrion* because the evidence clearly showed that applicant had a sufficient understanding of English. In contrast, the defendant in *Negron* had *no* understanding of English. *See United States ex rel. Negron,* 310 F.Supp. at 1307. Accordingly, in the instant case, it would be a "fruitless and frustrating exercise for [this Court] to have to infer language difficulty from every faltering, repetitious bit of testimony in the record." *See Carrion,* 488 F.2d at 15.

that, on the morning when applicant changed his plea from not guilty to *nolo contendere,* he told applicant that "it was extraordinarily unlikely that he'd be allowed to remain in the country as a result of this plea." When asked by applicant's postconviction relief counsel whether it was possible that applicant did not understand the rights which he was "giving up with respect to the immigration consequences," applicant's trial counsel stated: "Definitely not. He understood the immigration consequences * * *."

In light of the testimony of trial counsel (whom the hearing justice called a credible witness) as to the multiple occasions on which he advised applicant about the possible immigration consequences of pleading *nolo contendere,* we are satisfied that the hearing justice did not err in his determination that counsel was not ineffective, specifically with respect to his advice about the possible immigration consequences of changing his plea to *nolo contendere.*

### 2. Essential Elements of the Offense

■ The applicant further contends (1) that his trial counsel failed to properly explain the elements of the offense to which he was considering entering a plea of *nolo contendere* and, (2) that, as a result, his plea was not intelligent.

Rule 11 of the Superior Court Rules of Criminal Procedure sets forth the manner in which a trial justice must conduct the plea colloquy in order to safeguard constitutional guarantees. *Rodrigues v. State,* 985 A.2d 311, 313 (R.I.2009). Rule 11 provides as follows:

"A defendant may plead not guilty, guilty or, with the consent of the court, nolo contendere. The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of nolo contendere without first addressing the defendant personally and determining that

the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty or nolo contendere unless it is satisfied that there is a factual basis for the plea."

We recognize that the transcript of the plea hearing has not been presented to this Court as part of the record (although it was part of the record at the postconviction relief hearing). We therefore are unable to review what transpired at the earlier hearing in its entirety (as the hearing justice was able to do at the postconviction relief stage); instead, we are able to review only the *testimony* given at the postconviction relief hearing with respect to that plea colloquy.

We perceive no basis for holding that the hearing justice erred in declining to find that applicant's multiple conferences with his trial counsel during the colloquy evidenced that the plea was not intelligent. Indeed, according to the record before us, after the conferences, applicant acknowledged that he understood the colloquy.

As a result, the hearing justice's determination as to the plea did not constitute clear error.

### D

### The Allegation that Trial Counsel Failed to Properly Prepare

■ The applicant argues that the hearing justice erred in determining that trial counsel effectively represented him; he contends that trial counsel breached his duty to investigate by failing to properly prepare for the suppression hearing, at which hearing the principal issue was ap-

plicant's consent (*vel non*) to the search of the car.

We are not persuaded that the hearing justice erred in deciding that applicant was not deprived of the effective assistance of counsel; indeed, it is clear to us from the record that trial counsel acted well within the level of competence demanded of attorneys in criminal cases. *See Gonder*, 935 A.2d at 88. The record reveals that, during the hearing on the motion to suppress on April 11 and 12, 2006, applicant's trial counsel objected on multiple occasions to responses during the direct examination of the officers who took part in the search of applicant's vehicle. The applicant's trial counsel additionally performed a thorough cross-examination of one of the officers with respect to whether or not applicant gave consent for the search of the car. The trial counsel then made an extensive argument to the hearing justice.

Moreover, at the hearing on postconviction relief, trial counsel testified that he had prepared for the suppression hearing, even though he did not have any notes to reflect such preparation. He elaborated by explaining that he does not prepare for a hearing by creating lines of direct examination or cross-examination in writing.

We recognize that "counsel has a duty to investigate his [or her] client's case * * *." *Neufville*, 13 A.3d at 612. In the case at bar, however, in view of trial counsel's thorough questioning and extensive argument at the suppression hearing, coupled with the hearing justice's findings as to the credibility of counsel, it is our judgment that the hearing justice did not err in ruling that trial counsel was not ineffective.

### E

### Meaningful Attorney–Client Communications

■ The applicant further avers that his trial counsel was ineffective because they never engaged in meaningful attorney-client communications due to the fact that trial counsel never visited him at the ACI, but rather spoke with him only at the courthouse prior to hearings.

We are satisfied that, by speaking with applicant only at the courthouse, applicant's trial counsel's performance did not fall outside the range of competence demanded of attorneys in criminal cases. *See generally Gonder*, 935 A.2d at 88. Significantly, at the postconviction relief hearing, trial counsel testified that, when speaking with applicant about the substantive issues in his case, he would meet with him in an attorney conference room, which, he testified, had "a very thick door that leads into both halves of the conference rooms; that is to say, there are two very thick doors and they're only—you can only open them, apparently, by way of a key from the outside." In light of the testimony about trial counsel's substantive and confidential discussions with applicant, coupled with the hearing justice's findings as to the credibility of counsel, it is our opinion that the hearing justice did not err in finding that defendant did not receive ineffective assistance of counsel.

### F

### The Prejudice Component of *Strickland*

In light of our determination that trial counsel's performance was within the range of competence demanded of attorneys in criminal cases, we need not address the second component of the *Strickland* analysis—*viz.*, whether counsel's performance prejudiced the applicant. *See Gonder*, 935 A.2d at 88; *see also Neufville*, 13 A.3d at 614; *Page*, 995 A.2d at 945 (holding that, since the attorney's performance "did not run afoul of even

the first prong (deficiency) under the *Strickland* test[,]" the Court need not consider the prejudice prong).

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record in this case may be returned to that tribunal.